CASE No. 1081.

MAULDIN v. GOSSETT.

1. A rule was issued requiring a sheriff to show cause why he did not apply moneys in his hands derived from a sale of the lands of one deceased to a judgment obtained against the deceased in his lifetime. Upon return made, the rule was referred to a referee, who reported a certain amount still due. To this report the administrator of the deceased filed exceptions, which, in substance, alleged that the judgment was paid. The report was confirmed. *Held,* that this proceeding was not *res judicata* as to creditors and distributees of the deceased not parties to the rule.

2. The proceeding by rule was proper, and the report, when confirmed, became a judgment binding upon parties and privies; but even if the administrator was a party and became thereby bound, his appearance would not bind his privies, unless he had a right to appear as a necessary and proper party.

3. The creditors are privies of the administrator and bound by his legitimate acts, but not where his act related to the disposition of moneys arising from a sheriff's sale of the intestate's land after his death, under judgment obtained against him in his lifetime.

Before PRESSLEY, J., Pickens, October, 1879.

This was an action by Hannah E. Mauldin against John R. Gossett, administrator of John A. Easley, Sr., Mary H. Cleve-- land, administratrix of B. F. Cleveland, J. H. Cleveland, William Choice, Emily Choice and Harriet D. Evins, com-- menced in 1878.

The questions involved are clearly stated in the referee's re-- port, and also in the opinion. Omitting so much of the report, as finds as matter of fact and law, that the judgment of William Choice against John A. Easley, Jr., (based upon the same debt. as the judgment against John A. Easley, Sr.,) was paid, the report of J. J. Norton, Esq., the referee, was as follows:

The issues of law and fact in this case having been referred to the referee for decision, he begs leave to report that on March 15th, 1879, reference was opened herein.

The plaintiff is the owner of a judgment in favor of John W. Brooks for $1799.30 and interest, with $19.40 costs, against John A. Easley, Sr., and John A. Easley, Jr.

The defendants, Mary H. Cleveland and J. H. Cleveland, are owners of the judgments against John A. Easley, Sr., as set forth in plaintiff's complaint, and not contested by any of the other defendants. William Choice, Emily Choice and Harriet D. Evins are the owners of a judgment in favor of William Choice, the elder, for $5613.48 and interest, and $9.95 costs, against John A. Easley, Sr., these four judgments being of the same date, to wit, March 20th, 1858. The last is based on notes, which are included in a previous separate judgment for $7167.- 60, besides interest and costs, in favor of William Choice, the elder, against John A. Easley, Jr.

The issue in this action is, whether the last-mentioned judg-- ment has been paid in fact—and, if so, whether the plaintiff is concluded from setting up such payment in the present action by the proceedings in this court under a rule by William Choice, the elder, in his lifetime, against J. Riley Ferguson, sheriff of this county, for failing to pay on his judgment moneys collected by sale of the property of the defendant, John A. Easley, Sr.

\*   \*   \*

The proceedings set up in bar are, briefly—*First.* A notice of a rule upon J. Riley Ferguson, sheriff of Pickens county, to

show cause why he should not be attached for contempt in not paying over the money in his hands to the plaintiffs in the cases of William Choice *v.* John A. Easley, Sr.; Mrs. B. F. Cleveland *v.* John A. Easley, Sr., and J. H. Cleveland *v.* John A. Easley, Sr. *Second.* An order thereunder referring it to William H. Perry, Esq., to ascertain and report what amounts, if any, have been paid on the various judgments against J. A. Easley, Sr., now standing on the sheriff's books, dated June 10th, 1874, by Judge Cooke, and by consent of plaintiff's and defendants' attorneys. *Third.* The report of the referee, filed March 5th, 1875, that he has held references, heard testimony and examined the records in the sheriff's office, and that he found that the judgment of William Choice *v.* John A. Easley, Sr., was obtained upon a note upon which the said J. A. Easley, Sr., was surety for his son, J. A. Easley, Jr. " Previous to that time the plaintiff, Choice, had obtained judgment against the said J. A. Easley, Jr., for $7167.60, which included the note just mentioned. The lands of J. A. Easley, Jr., were sold by the sheriff of Pickens county. At various times W. K. Easley, who was the administrator of J. A. Easley, Jr., and purchaser of one of the tracts of land sold by the sheriff as aforesaid, made payment to the said William Choice and took receipts. These receipts are in evidence. On March 19th, 1860, L. C. Craig, then sheriff of Pickens county, entered upon his books on the case of William Choice *v.* J. A. Easley, Jr., that he had received from the sale of defendant's land $3508.21.

" On the same day the said W. K. Easley, as attorney for William Choice (as the receipt purports), entered upon the same case a receipt for the various amounts which he had paid the plaintiff, Choice, and for which he had taken said Choice's receipts as before mentioned. He receipts for these amounts as if paid to him by the sheriff. This receipt of William K. Easley, attorney for William Choice, the referee thinks was an application of the $3508.21 received by the sheriff on the same day. Taking these receipts together, with one for $600, which was subsequently given by Choice, as a basis of calculation, the referee finds that there was due upon said judgment of William Choice

*v.* J. A. Easley, Jr., on February 1st, 1861, the date of the last receipt, the sum of $2211.88.

" The judgment of William Choice *v.* J. A. Easley, Sr., being upon a note which was included in the previous judgment of William Choice *v.* John A. Easley, Jr., the referee thinks and reports that there is now due upon the judgment of William Choice *v.* J. A. Easley, Sr., $2211.88, with interest on the same from February 1st, 1861. And that no payments have been made on the judgments of Mrs. B. F. Cleveland *v.* J. A. Easley, Sr., and of J. H. Cleveland *v.* J. A. Easley, Sr."

*Fourth.* The administrator of John A. Easley, Sr., by Earle & Wells, his attorneys, excepted to the referee's report, so far as it reported a balance due on Choice's judgment—1. Because the referee adjudged the sheriff's books to be an application of the proceeds of the sale of J. A. Easley, Jr.'s, lands, insisting that the records and receipts showed the contrary, one being for contra claim of J. A. Easley, Jr., two for payments made by J. A. Easley, Sr., amounting to $1123.13, and that the receipts for $1050, for $1750 and for $600, and the administrator's returns showed that they were paid from the personal estate of J. A. Easley, Jr. 2. Because the payments from the estate of J. A. Easley, Jr., should have been applied *pro rata* to the notes composing the judgment, and the payments of J. A. Easley, Sr., applied exclusively to the note upon which he was surety. 3. Because the real estate of J. A. Easley, Jr., sold for over $6000 more than the sheriff applied, and that surplus should be applied to the extinguishment of William Choice's judgment in full or *pro tanto;* and, 4. Because the report was otherwise contrary to the law and the evidence.

*Fifth.* An order, July 23d, 1877, confirming report of referee.

To the proceedings just set forth, neither the plaintiff nor her assignor were parties, and the plaintiff insists that they are not a bar to her present action. *First.* Because the court has no power to adjudicate such questions under a rule against the sheriff. *Second.* Because no judgment had been rendered. *Third.* Because the exceptions by the administrator are a nullity, as he was no party. *Fourth.* Because if, by litigating, he became a party, a judgment against him is not binding on the plaintiff;

and, *Fifth.* Because the subject matter is not the same as in the present action.

A judgment is "the final determination of the rights of the parties in the action." *Rev. Stat.* 630, § 268. The order confirming the report of the referee in this proceeding was binding on the sheriff and all the other parties to the proceeding, if the court possessed the power to adjudicate the questions involved under that form of proceeding. *Emory* v. *Davis,* 4 *S. C.* 36. It is conceded that it is not usual to decide such questions under a rule against the sheriff. When there is a contest for the recovery of money by different *bona fide* contending parties, the sheriff should be regarded as a stakeholder. "A rule will always go where the legal rights of the parties can be made to appear from a conceded state of facts. But where the facts are disputed, and the law depends on their development, the parties should be kept to their action at law, or should enter into a consent rule to make up an issue to ascertain their rights. The court think that the motion should be granted, and issue is directed to be made up to try the question whether the money in the hands of the sheriff should not be applied to the payment of the judgment of Cooper v. Scott." *Cooper* v. *Scott,* 2 *McM.* 156. The questions involved in the rule were properly tried by the referee by consent.

The administrator of J. A. Easley, Sr., having come in under the rule and litigated, is as much bound by the decision under it as if he had been originally a party. *Tate* v. *Hunter,* 3 *Strob. Eq.* 145 ; *Freem. on Judg.,* § 174.

In *Freem. on Judg.,* § 163, it is said that "a judgment against an administrator is binding on the creditors of the estate," citing *Stone* v. *Wood,* 16 *Ill.* 177 ; *Pickens* v. *Yarborough,* 30 *Ala.* 408.

In *McDowall* v. *McDowall, Bail. Eq.* 330, the plaintiffs were residuary legatees under the will of John McDowall, deceased, and the defendants were his executor and executrix, the latter of whom was also the widow of testator. The executrix had sued her co-executor at law and recovered dower, to which the Court of Equity thought her not entitled, as she had long previously accepted the legacies under her husband's will, which he

considered a full compensation for any right of dower she had in his estate, but as the court of law had decided the question under a suit, though so irregular in form that it might have been abated, the Court of Equity held the matter *res adjudicata* not only as to the executor, who had been a party, but also as to the residuary legatees, who were not parties.

Under these authorities I conclude that the plaintiff is bound by the judgment in the rule above mentioned against the administrator of J. A. Easley, Jr. It is plain from an inspection of the complaint herein and the exceptions to the rule above mentioned, that the main question in each case was whether the judgment of William Choice against J. A. Easley, Sr., was satisfied, either in fact or by operation of law, and that the same evidence was relied on to establish satisfaction, but it was argued that the object of the rule was to obtain from the sheriff moneys then in his hands from the sales of the real estate of John A. Easley, Sr., deceased, on the judgment of William Choice and other judgments, according to their apparent status on his books, and that the object of this action is to have the assets in the administrator's hands applied to the judgments according to their legal priorities as they appear in the sheriff's office, excluding the judgment in favor of William Choice, which plaintiff prays may "be marked satisfied." Whether the purpose be the same or not, is, in the referee's opinion, immaterial, one of the precise issues, both in the rule and in the present action, being whether the judgment recovered by William Choice against J. A. Easley, Sr., was paid—and, if not, how much was due thereon. See *Freem. on Judg.*, §§ 256, 257, and also *Jones* v. *Weathersbee*, 4 *Strob.* 50, in which the object of the suits was to recover different sums of money on account of the same nuisance, and the defendant was ready to prove title in the second suit, which he had attempted to do in the first and failed. The first judgment was held to be a bar on the question of title. Also in McDowall v. McDowall, above cited, the object of one suit was to recover dower, and of the other to recover legacies. We have many cases to the same effect which need not be here cited.

No evidence was offered as to the pecuniary irresponsibility of the administrator, John R. Gossett, nor of any unfitness on his

part to manage the estate of the intestate, nor of any misconduct on his part in reference thereto. The law therefore assumes him to be a fit and proper person to exercise the trusts reposed in him, and that he has faithfully performed the duties of his office.

It is therefore adjudged that John R. Gossett do pay out all moneys in his hands, and all which may come into his hands as such administrator—*First.* To the expenses of administration, including a proper counsel fee to his attorney in this action, and that he be allowed also a reasonable counsel fee in the case of the rule against J. Riley Ferguson, sheriff, in the cases of William Choice *v.* J. A. Easley, Sr., B. F. Cleveland *v.* Same, and J. H. Cleveland *v.* Same. *Second.* To any demands against the estate of his intestate having priority under the statute to the judgments owned by the parties to this action, if there be any such. And, *Third. Pro rata* to the four judgments owned by the parties to this action, as hereinbefore stated, estimating the one obtained by William Choice at $2211.88, on February 1st, 1861, and the other three judgments at their face, taking into account in the distribution any payments made by himself or the sheriff upon any one or more of them since July 23d, 1877, if any such have been made, so as to secure equality in such distribution according to this decision.

It is further adjudged that the plaintiff pay the costs of this action.

Both parties excepted to this report. The Circuit decree was as follows:

Judge Hudson referred this case to J. J. Norton, to hear the same and decide the issues of law and fact involved. Both parties have argued before me their exceptions to the referee's report without claiming that his judgment be entered as that of the court, and even without bringing to my attention the terms of the order.

The report shows that the plaintiff and three of the defendants, J. H. Cleveland, B. F. Cleveland, and the assignees of W. Choice, represent four judgments against J. A. Easley, Sr., all of same date, March 20th, 1858. Plaintiff avers that the Choice judgment has been fully satisfied, and the referee so finds, as

matter of fact, in which finding I concur. But the assignees of Choice claim that this issue has been formerly settled in their favor by a judgment of this court, binding upon the administrator of Easley, and therefore binding on the plaintiff and all other creditors of Easley.

The facts on that point are these: The sheriff of Pickens had funds of the estate of Easley, and the parties representing the Choice and the Cleveland judgments served him with a rule to show cause why he should not be required to pay said money to their judgments. It was referred to W. H. Perry " to ascertain and report what amounts, if any, had been paid on the various judgments against J. A. Easley, now standing open on the sheriff's books." He reported a balance unpaid on the Choice judgment, and that nothing had been paid on those of the Clevelands, but does not report on or mention that of the plaintiff, who was not a party to the rule, but whose judgment was manifestly included in the said order, it being then open on " the sheriff's " books. The administrator of Easley filed exceptions to that part of the report which allowed a balance on the Choice judgment, but made no exceptions to the Cleveland judgments. It does not appear how the said administrator was admitted to take part in the proceedings under the said rule, or even whether he was allowed to do so. His exceptions to the report are not expressly overruled or even in any respect referred to in Judge Cooke's order, which confirmed said report, and made the rule absolute against the sheriff.

Nor does it in any manner appear whether the said administrator was allowed a hearing on his exceptions or was disregarded as not a necessary or proper party in that proceeding. The source from which the sheriff derived the money then in his hands, is not proved or reported on in this case. Whether it came from real estate or personal, or whether the said administrator would, in any event, have been entitled to receive and administer it, does not appear; except that it is clear that he does not dispute the right of the Clevelands to have it applied to their judgments by the sheriff.

The order of Judge Cooke in making the rule absolute against the sheriff contains nothing about the application by the admin-

istrator of any funds in his hands, nor does it at all settle that the money then in question was any part of that which he was entitled to administer.

I therefore do not concur in the report of the referee, that the said order of Judge Cooke was any final adjudication of the respective rights of the creditors of J. A. Easley, Sr., or that it fixed as against them the status of the Choice judgment. They who represent it were bound to prove their plea in this case. The burden is on them to prove that the fund then in question arose from personal estate, which the administrator was entitled to receive and apply in due course of administration, and therefore as to that fund that he was entitled to litigate in that case, for the rights of all the creditors of his intestate.

That not being proved in this case, I hold that the said administrator was neither a necessary nor a proper party in the said proceedings against the sheriff, and that his voluntary interference therein could not so make the plaintiff a party to that case as to bar her claim to try the merits of her case in this action. It is therefore adjudged that so much of the referee's report as decides that the said judgment of William Choice has been paid is hereby confirmed, and that the remainder of said report is overruled.

Further ordered and adjudged that J. R. Gossett, administrator of J. A. Easley, Sr., apply the assets of said estate to the expenses of administration, including the costs of this case and a reasonable counsel fee to his attorney, and the remainder in due course of administration, according to the legal priorities and liens of the various creditors, excepting the said judgment of William Choice *v.* J. A. Easley, Sr.

From this decree William Choice, Emily Choice and Harriet D. Evins appealed upon the grounds considered in the opinion. The second proposition approved but not stated, was as follows, (omitting authorities): "That the question here was properly determined by rule, is fully sustained by the argument of the referee. A reference now is equal to order of issue. The final order upon the report of a referee in such case is a final judg-

ment. Being a judgment, it cannot be attacked collaterally, and is binding on parties and privies."

*Mr. R. W. Shand,* for appellant.

*Messrs. G. G. Wells* and *M. F. Ansell,* contra.

September 20th, 1881. The opinion of the court was delivered by

SIMPSON, C. J. In this case the plaintiff, (respondent), a judgment creditor of one Easley, deceased, brought this action against Gossett, administrator of Easley, and the other defendants, (appellants), who claimed to be judgment creditors also of Easley, to have the judgment claimed by Evins, William and Emily Choice, appellants, known as the William Choice, Sr., judgment, declared paid, and to require the administrator to pay out the moneys in his hands to the unsatisfied judgments, her own among others.

The appellants, who had become the owners of the William Choice, Sr., judgment, resisted this action, or so much of it as alleged that their judgment had been paid. They claim that this question had been settled in their favor in a previous action, to which the administrator of Easley was a party; that the administrator represented all the creditors in this action; that the plaintiff, being one of the creditors, was bound thereby, and that the question now raised by her was *res judicata.*

The case was referred to J. J. Norton, Esq., as special referee. Mr. Norton seems to have been of the opinion that the William Choice judgment had been legally satisfied by the receipt of certain moneys by the sheriff, in 1861, which should have been applied to this judgment; but, believing this question to be settled the other way in the previous case, he sustained the plea of *res judicata* and reported the judgment still open and entitled to its share of the moneys in the hands of the administrator. And he recommended that the assets in the hands of the administrator, Gossett, after first being applied to certain expenses connected with the litigation, be paid out *pro rata,* on four judgments established before him, including the Choice judgment,

upon which last judgment he held that the previous proceedings, out of which the plea of *res judicata* had sprung, had established that the sum of $2211.88 was due on February 1st, 1861. Judge Pressley overruled this report, holding upon the facts of the previous case that the plea of *res judicata* could not be legally interposed by the appellants; and he adjudged that the Choice judgment had been paid. He, therefore, ordered the administrator, Gossett, to apply the assets in his hands, after expenses of administration, &c., in the due course of administration, according to the legal priorities and liens of the several creditors, excepting the Choice judgment.

This appeal is from this decree of Judge Pressley, and it involves the single question whether Judge Pressley was in error in overruling the plea of *res judicata* relied on by the appellants and sustained by the referee. To determine this question we must now examine the previous proceedings.

During the lifetime of William Choice, Sr., the precise date not given, but some time in 1874, he instituted a proceeding by rule upon the then sheriff of Pickens county, the county in which his judgment had been entered, to show cause why he should not be attached for contempt in not paying over the money in his hands to his judgment, the one now in controversy, and also to the Cleveland judgment. This rule was referred to William H. Perry, to ascertain and report what amounts, if any, had been paid on the various judgments against Easley, then standing on the sheriff's books. Mr. Perry reported that, among other judgments, he found the Choice judgment, after deducting all payments, open to the extent of $2211.88.

The administrator of Easley, by attorneys, excepted to the referee's report, as far as he reported a balance due on the Choice judgment, on the ground that the sheriff had received, in the sale of the real estate of J. A. Easley, Jr., also covered by this judgment, over $6000 more than he had applied, which surplus it was his duty to apply, and, if applied, the judgment would be paid.

How the administrator of Easley became a party to this rule— whether by service of process or by his own voluntary act— does not appear, nor does it appear whether his exceptions were heard and considered by the court. He is not mentioned

in the proceeding, and at no stage appears, except in the filing of these exceptions. This is the first and last that we hear of him in the rule. In the order of Judge Cooke, confirming the report of Mr. Perry, and making the rule absolute against the sheriff, these exceptions are not overruled or referred to in any way whatever.

It is expressly admitted in the argument of Mr. Shand, appellant's attorney, that the object of the rule was to have applied to the Choice judgment the proceeds of the sale of the land sold by the sheriff, and which were in his hands. Now, the position taken by the appellants is, that Gossett, the administrator of Easley, having been a party to this rule, either voluntarily or otherwise, and one of the issues arising under the rule being whether their judgment was still open, which issue had been determined in their favor without appeal, that this question is now *res judicata*, estopping the administrator and all creditors, as his privies, from denying its existence, and that the Circuit judge should have so held.

It cannot be denied that a direct and final judgment or decree of a court of competent jurisdiction is forever conclusive and binding as to the subject matter embraced between the same parties and all privies in law or estate. *Manigault* v. *Deas*, *Bail. Eq.* 284.

If, then, the decision rendered on this rule was a decision by a competent court, on the same subject matter and between the same parties, the principle announced above would apply and the plea of *res judicata* would be conclusive. This plea, however, to be effective, requires the concurrence of four conditions: 1st. Identity in the thing sued for. 2d. Identity in the cause of action. 3d. Identity in the persons or parties. 4th. Identity in the quality of the persons for or against whom the claim is made. *Bouvier L. Dic.* 465. As an example of the last condition, a final judgment against a party in his own right would be no bar to an action by him as administrator.

If any one of these unities is wanting, and especially the unity of parties, the plea cannot be made out, because, while it is just and proper that litigation between the same parties, after they have once had their rights adjudicated by a competent tribunal

without appeal, should end, yet a thing done between others ought not to injure another. A transaction between two parties ought not to operate to the disadvantage of a third. The maxim *res inter alios acta nocere non debet* is as strong for the protection of those not before the court as that of *res adjudicata* for those who are present.

There is no question here as to the competency of the court. The rule was in the nature of a special proceeding, not unusual in cases of this kind, and it was heard by a competent tribunal. The thing demanded by the rule was the money supposed to be in the hands of the sheriff, derived from the sale of the real estate of the judgment debtor. The cause of action involved the right of Choice to have the money applied to his judgment.

The parties were the judgment creditor, the sheriff, and, the respondent contends, Gossett, the administrator of the deceased debtor; the quality of the judgment creditor being in his own right, that of the sheriff in his official capacity, and that of Gossett as administrator of the debtor.

Now, how does the case before the court stand as to these matters? The thing demanded here is the money in the hands of the administrator derived from the personal estate of the debtor. The cause of action involves the right of the Choice judgment to a portion of this money. The parties are the plaintiff, a judgment creditor, the administrator of the deceased debtor and the present owners of the Choice judgment. The thing demanded in both cases is money belonging to the deceased debtor; in the first case being proceeds of his real estate, and in the latter that of his personalty. The object of the suit in each case is to determine the proper application of the assets of the deceased debtor, and especially whether the Choice judgment should receive any portion; the main question is the same, and the parties are the same, with the addition of the plaintiff. The conditions, then, may be regarded as the same in each case, with the exception that the plaintiff, who is a party in the present proceedings, was not a party, at least nominally, in the first.

This exception is fatal to the plea, unless it can be made to appear that the plaintiff, although not nominally before the court in the former proceeding, was yet present by her repre-

sentative in such way as to bind her. And this is the real question in the case. Now, waiving the point whether the admistrator was a party to the former proceeding or not, the question arises, was he a necessary party ? and in such sense as that, his being a party, the judgment of the court, unappealed from, bound him as well as the creditors and distributees of the estate which he represented.

It will not be denied that the acts of the administrator are binding as to all matters over which he has legitimate control as such administrator. The power delegated to the administrator is to administer the goods and chattels, rights and credits which were of his intestate at the time of his death, and the condition of his bond is to perform this duty. His power goes to this extent, and no further. Within the range of this power his acts. not only bind himself, but also all those of whom he is in law the representative; creditors and distributees are his privies in law, and his acts, when free from collusion, bind them. As to all matters, therefore, connected with the goods and chattels, rights. and credits of the deceased, undergoing litigation, he is not only a proper, but a necessary party.

But the administrator does not represent the real estate of his intestate. The real estate, it is true, may be made subject to the debts of the intestate, but not by the action of the administrator—that is, by virtue of his administration. The creditors may reach the real estate without his aid, and he is not responsible on his bond if it be lost. He can commit no *devastavit* in connection therewith.

In the case of *Garlick* v. *Patterson, Cheves' Eq.* 27, referred to in the argument, it was held that where a balance is found in the hands of a sheriff, after the sale of the real estate of an intestate in satisfaction of executions, the administrator is not entitled to this surplus, either in law or equity, as assets for the payment of debts, though the creditors themselves may claim it. Nor would his bondsmen be liable even if it passed into his hands. In the case of *Bank* v. *Inglesby, Spears' Eq.* 399, the same doctrine is held as to a surplus in the hands of the master upon sale in foreclosure of a mortgage of real estate. The master was ruled by the administrator. Chancellor Dunkin

dismissed the rule, and, upon appeal, Chancellor Johnson said: "That the defendant is not, in his character as administrator, entitled to receive the money is directly decided in *Ex parte Foster, Rice's Eq.* 19." "It is plain, therefore," says the Chancellor, "that the sureties on his bond would not be liable for money arising from the sales of real estate."

The attorney of appellant has placed upon the record an admission that the money in controversy in the rule was derived from the sale of real estate of the deceased debtor. Under the decisions referred to, the administrator had no legal interest in this money. He was not entitled to demand or receive it from the sheriff by virtue of his powers as administrator, and if he had received and wasted it his bondsmen would not have been liable. If this be so it was no interest of his, nor was it any part of his duty, to see that the sheriff applied this money properly. That was a matter for the sheriff, the heirs-at-law and the creditors. Such being the fact, we cannot see how the administrator was a necessary or even a proper party to the rule. If he was not a necessary or proper party, then his appearing in the case, either voluntarily or otherwise, would be an act outside of his duty and beyond his power as administrator, and would not bind those of whom administrators are the representatives, to wit, distributees and creditors. It is urged, however, that the main question in controversy under the rule, was whether the Choice judgment had been paid, and that this was a question in which the administrator was interested as administrator, and that this interest rendered it necessary and proper that he should have been made a party to that proceeding.

If the effort in the rule had been to establish the judgment of Choice against any funds under the control of the administrator, and a judgment or decree sought to be enforced therein against him as administrator, or if the funds in the hands of the sheriff had been derived from the sale of personal property, and were a subject of controversy between himself and Choice and the rule had been resorted to to settle the rights of the parties, he should have been a party. But neither of these cases existed; no redress was prayed against the administrator, nor was he entitled to any relief. No act of his had given rise to the rule, nor was

any interest of his imperiled by its issue. Was it not time enough for him to attack the judgment when an effort was made to set it up against the personal estate in his hands? Was he bound, or was it in any sense his duty, to intervene in a proceeding between others, simply because a question was incidentally raised there which might possibly thereafter be raised against him? If he had been in possession of any facts showing payment of this judgment, why could he not have been a witness, instead of a party? We cannot see that he was either a necessary or proper party, and we find no error in the order of the Circuit judge overruling the plea of the appellants.

The appellants contend that where money arising from the sale of lands of an intestate is in the hands of the sheriff, whether a judgment claiming this money has been paid or not, is an issue to which the administrator of the deceased is a proper party, and to support this position the following authorities have been referred to in the argument, to wit: *Story's Eq. Pl.*, §§ 176, 169 ; *Rae* v. *Stead*, 2 *Cr.* 407 ; *Fretwell* v. *Neal*, 11 *Rich.* 371 ; *Rogers* v. *Huggins*, 6 *S. C.* 356 ; *Pomeroy* 315. We do not think that the authorities referred to fully sustain the position claimed. It is stated both in Story and Pomeroy that the administrator or executor is a necessary party to an action against the heirs on a debt of the ancestor, on account of real estate descended or devised to them ; but in this case the debt in question had been reduced to judgment against the intestate in his lifetime, and the rule was not intended to obtain a judgment against the heirs, but to have the judgment already obtained paid out of moneys in which they were interested. Whether the judgment was satisfied came up incidentally as one of the facts in the case upon which the main issue depended, but it was not in itself the main issue.

The second proposition of appellants is no doubt correct.

The third, that where an administrator appears in a proceeding, whether personally a party or not, he is bound and estopped, may be true, and yet his appearance in such case would not bind his privies, unless the administrator had a right to appear as a necessary and proper party.

The fourth, that where the administrator is estopped, having been a party, the creditors, who are privies, are also estopped, is true as to all matters where the administrator legitimately acted as administrator ; but in this case, as we have seen, this doctrine does not apply.

Besides, the proceeding under the rule was had in 1875, some three years before this action commenced.  The rule was made absolute against the sheriff.  It does not appear but that the sheriff paid this money on the Choice judgment, since the order making the rule absolute.  The plea of *res adjudicata* should not shut off an inquiry of this sort.

If it could avail at all, it should only avail as to the matters involved in the rule.  We think there was no error in the Circuit judge overruling the plea, but we think, under all the circumstances, the Circuit judge should not have held that the Choice judgment was satisfied.  This is a matter which should undergo a full investigation, unencumbered with the former proceeding.

The judgment of this court is that the judgment of the Circuit Court be modified so that so much of it as overrules the plea of *res judicata* be sustained, and so much as holds the Choice judgment satisfied be reversed, subject to further investigation, and that the case be remanded for such further proceeding as may be necessary.

McIver and McGowan, A. J.'s, concurred.